Cathy I. ANTHONY, et al., Plaintiffs,

v.

UNITED TELEPHONE CO. OF OHIO,
(aka Sprint), Defendant.

No. 1:99 CV 943.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 2, 2002.

Stephen P. Postalakis, Roxi A. Liming, Blaugrund, Herbert & Martin, Emily J. Lewis, Dublin, OH, for Plaintiffs.

John B. Lewis, Thomas J. Piatak, Michelle P. Stronczer, Baker & Hostetler, LLP, Cleveland, OH, for Defendant.

## MEMORANDUM OF OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WELLS, District Judge.

This case is currently before the Court on defendant United Telephone Co. of Ohio's motion for summary judgment. For the reasons that follow, defendant's motion for summary judgment is granted.

## I. BACKGROUND

On 22 April 1999, plaintiffs Cathy and Oliver Anthony filed a complaint against United Telephone Co. Ohio, aka Sprint ("Sprint"), alleging violations of the Americans with Disabilities Act of 1990; 42 U.S.C. § 12101 et seq. ("ADA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"); the Employment Retirement Income Security Act, 29 U.S.C. § 1001 et seq., ("ERISA"), Chapter 4112 of the Ohio Revised Code, and Ohio common law, including wrongful termination, breach of contract and infliction of emotional distress. (Docket No. 1.) On 1 May 2000, Sprint filed a motion for summary judgment on all plaintiffs claims. (Docket No. 22.) On 10 July 2000, plaintiffs voluntarily dismissed their ERISA claims and filed a memorandum contra defendant's motion for summary judgment. Defendant filed a reply memorandum on 2 August 2000. (Docket No. 53.)

The case was referred to Magistrate Judge Vecchiarelli for a Report & Recommendation ("R & R"). (Docket No. 47.) Magistrate Judge Vecchiarelli filed her R & R recommending that defendant's motion for summary judgment be granted. (Docket No. 63.) Plaintiffs filed objections to the R & R (docket no. 66), to which defendant responded (docket no. 67).

## II. RELEVANT FACTS

The Court has independently reviewed the evidence and sets forth the facts relevant to plaintiffs' objections as follows.

Cathy Anthony ("Ms.Anthony") began her employment with Sprint in October 1979 as a customer service relations representative. (Anthony depo. I, p. 130.) In 1995, Sprint underwent a reorganization and Ms. Anthony obtained another position with Sprint as an administrative assistant in the Human Resources Department. (Anthony depo. I, pp. 147–51.)

In June 1992, Ms. Anthony gave birth to her son Oliver Anthony ("Oliver"). Oliver has suffered from cerebral palsy since birth and has the motor skills of a one or two year old. (Anthony Aff. ¶ 2.) Oliver must be transported in a wheelchair because he cannot walk, and must be fed through a tube because he cannot swallow enough food to maintain his health. Oliver suffers from frequent illness due to his poor immune system. (Anthony Aff. ¶ 2.) Ms. Anthony claims that Oliver is disabled under the ADA and Sprint does not dispute this.

Ms. Anthony also claims that she is disabled under the ADA. In the complaint she states that she has knee impairment and arthritis. (Complaint ¶¶ 9, 59.) In her affidavit she claims to suffer from knee and back problems, colitis, migraines, depression, carpal tunnel syndrome, and one leg being shorter than the other. She claims that these disabilities substantially limit her ability to participate in major life activities. (Anthony Aff. ¶¶ 2–5.) Several Sprint employees were aware that Ms. Anthony and Oliver suffered from these conditions, including Human Resources Manager Betty Merritt and one of Ms. Anthony's supervisors Rachel Griebling. (Merritt depo. p. 16; Griebling depo. I pp. 27–28.)

Sprint's Employee Handbook refers to a no-fault attendance practice. (Anthony depo. III, Ex. XX pp. 11, 27; J. Herr depo. Ex. 2.) Under Sprint's attendance practice, non-exempt, non-union employees are assigned "occurrences" for each period of unexcused, non-FMLA protected absence. Generally, an oral reprimand is given after three occurrences. (J. Herr depo. Ex. 2.) At four occurrences, the employee receives a written reprimand. According to Sprint, absences that qualify under the FMLA are not counted as an occurrence. (Griebling depo. p. 71.) The

policy was revised in November 1997, so that an employee with a certain number of occurrences is given progressive discipline. At eight occurrences, the employee is terminated. (Anthony Aff., Ex. 6 & 7; Payton depo. II pp. 20–21, Ex. 14.) The no-fault absenteeism policy provides that up to five days of vacation may be substituted for absences due to sickness "where applicable." When the vacation days are substituted for sick days, those sick days do not count as occurrences under the no-fault policy. (Anthony App. Ex. 1.)

During the last half of 1997, Sprint reorganized its human resources department. This reorganization eliminated numerous positions, including Ms. Anthony's position. (Anthony depo. II pp. 43, 136–39; Griebling depo. pp. 55–56.) Many of the employees whose jobs were eliminated in that reorganization were able to retain their employment with Sprint either by relocating, successfully bidding on other positions, or being assigned to vacant positions. (Griebling depo. pp. 51, 53, 55–56.) Some employees whose jobs were eliminated elected to take early retirement. (Anthony depo. III pp. 136–38.)

Ms. Anthony took 60 days of FMLA leave in 1997. She took 52 days for her own health reasons: (1) in March, she was absent for 18 days due to an operation on her left knee; (2) at the end of July, she missed 14 days due to the removal of plantar warts on her foot; and (3) beginning in October she took 20 days for surgery on her right knee. In addition to the 52 days of FMLA-approved leave that Ms. Anthony took for her own health conditions in 1997, she took an additional 26 days for her own health conditions in November of 1997 after she exhausted her FMLA leave. Ms. Anthony was absent for only 8 days—all FMLA—due to Oliver's health conditions in 1997. (J. Herr Aff. Ex. E; Anthony depo. Vol. II pp. 21–22.)

While Ms. Anthony was on leave in November of 1997, Sprint informed her that her position was being eliminated as part of reorganization. The day before Thanksgiving, Ms. Griebling and Judy Herr visited Ms. Anthony's home to deliver the news. (Anthony depo. II pp. 46–49; Anthony depo. III pp. 134.) Ms. Anthony received written notice in a letter dated 5 December 1997. (Anthony depo. pp. 45, 49–50, Ex. K.) Ms. Anthony did not bid on any positions until she returned from leave. (Anthony depo. III pp. 52–53, 57–58, 61–62, 76–77, Ex. MM, NN, OO, PP.)

On 8 December 1997, Ms. Anthony returned from medical leave during which she had exhausted her FMLA entitlement. (Anthony depo. II, Ex. O; Anthony depo. III, Ex. DDD.) At the time, Ms. Anthony knew that her job had been eliminated but did not know when her last day of work would be. (Anthony depo. II p. 46.) Judy Herr claims that because Ms. Anthony's first day back from leave was hectic, she was not able to formally advise Ms. Anthony on that day that Ms. Anthony had incurred an oral reprimand for excessive occurrences. (J. Herr depo. p. 21.)

The next day, 9 December 1997, Ms. Anthony called in sick with the flu. (Anthony depo. II pp. 21–22.) Ms. Anthony's 9 December absence resulted in another occurrence, bringing her total to 5 ½. (Anthony depo. II, Ex. O.) Because of the number of occurrences she had accrued, Ms. Anthony was subject to both oral and written reprimands. On 10 December 1997, Sprint formally gave Ms. Anthony both an oral and written reprimand for her occurrences. (Anthony depo. II pp. 31–34.)

Although Ms. Anthony exhausted her FMLA-protected leave on 30 October 1997, the remaining 26 days she missed counted as only one occurrence under

Sprint's attendance practice. (Anthony depo. III, Ex. DDD.) By letter dated 5 November 1997, Sprint notified Ms. Anthony that her FMLA leave had expired. The letter also explained that, although FMLA-qualified leave did not count as an occurrence, absences not covered by the FMLA would be counted as occurrences. (Anthony depo. III, Ex. DDD.) Under Sprint's employment practices, "occurrences" are on a cycle and can carry over from one year to the next. Ms. Anthony carried over two occurrences from 1996, one of which was deleted on January 23, 1997. During 1997, she incurred 4 ½ additional occurrences, including the final occurrence for her absence on 9 December 1997. (Anthony depo. II, Ex. O.) According to Sprint's attendance records, these "occurrences" were due to Ms. Anthony's own health conditions. (Anthony depo. II, pp. 21–22, Ex. 0; J. Herr Aff., Ex. E.)

Ms. Anthony disputes that she accumulated 5½ occurrences under Sprint's no-fault absenteeism policy. Specifically, Ms. Anthony claims that she was suffering from migraine headaches on 25 June 1996, 26 June 1996, 21 August 1996, and 3 June 1997 and should not have received occurrences for these absences because they were protected by the FMLA. Further, Ms. Anthony contends she should not have earned one-half an occurrence for her 17 April 1997 half day absences because she was "out sick." In addition, Ms. Anthony maintains that because she was absent on 5 September 1997 due to diarrhea, a symptom of her colitis, she should not have received an occurrence for that absence. (Anthony Aff. ¶¶ 11–15.)

Upon learning of her 5½ occurrences when she returned to work on 10 December 1997, Ms. Anthony asked her supervisor, Judy Herr, if she could substitute a vacation day for her 9 December 1997 absence, thereby eliminating that occurrence. Ms. Anthony claims that initially

Judy Herr said that this would be no problem. (J. Herr depo. p. 31; Anthony Aff. ¶ 19.) According to Ms. Anthony, Judy Herr and Carol Payton (another of Ms. Anthony's supervisors) informed Ms. Anthony later that day that Sprint would not permit her to take a vacation day in lieu of a sick day. Ms. Anthony maintains that Judy Herr informed Ms. Anthony that this decision came from somebody "higher up" in the company. (Anthony Aff. ¶ 20.)

Under Sprint's bidding practice, the written and oral reprimands Ms. Anthony's received for her occurrences disqualified her from bidding on other positions. (Anthony depo. II pp. 88–95; Payton depo. pp. 95–96.) Because Ms. Anthony's job soon would be eliminated, bidding on other positions was the only way she could maintain her employment with Sprint. Sprint waived Ms. Anthony's disqualification because of the disciplinary action so that she could bid on other positions to keep her employment with Sprint. (Anthony depo. III pp. 52; Payton depo. pp. 95–96; J. Herr depo. p. 32.) Ann Herr, the regional director of Human Resources for Sprint, told Judy Herr that she could not recommend Ms. Anthony for any job bids. Judy Herr testified that she could approve Ms. Anthony's bid for the position, in that Ms. Anthony had the qualifications for the job, but could not recommend her for the position. (J. Herr depo. pp. 31–33.)

Ms. Anthony bid on four positions when she returned from leave on 8 December 1997. (Anthony depo. III p. 52, Ex. MM, NN, OO, PP.) She bid on the posted positions for Administrative Assistant/Voice Services, Administrative Assistant/Network, WFM Load Administrator, and Benefits Assistant. (Anthony depo. III p. 52, Ex. MM, NN, OO, PP.) Judy Herr approved her bids for all of the positions, except Ms. Anthony's bid for the WFM Load Administrator because Ms. Anthony

did not have the requisite knowledge and therefore, was not qualified for the WFM Load Administrator position. (Anthony depo. III pp. 53, 57–58, 61–67, 76–77, Ex. MM, NN, OO, PP.) In addition, the two administrative assistant positions required that she possess the ability to type a minimum of 50 words per minute. (Anthony depo. III pp. 53–56, Ex. MM, NN.) Ms. Anthony failed to meet this standard. (Anthony depo. III pp. 54–56, 60, Ex. QQ.) Sprint never filled the Benefits Assistant position on which Ms. Anthony bid and eliminated this position in a budget cut. (Anthony depo. III p. 78; J. Herr depo. pp. 38–39).

Ms. Anthony contends that Sprint failed to post jobs in accordance with its policy and that employees with less seniority than Ms. Anthony were hired into non-posted positions. Ms. Anthony claims that Ann Herr told her she was not selected for at least one of these positions because of excessive absenteeism. (Anthony Aff. ¶¶ 22–25.) Ms. Anthony also claims that Ms. Payton permitted Administrative Assistant Jenny Stutz to retroactively revise her attendance record by substituting vacation for sick days, which enabled Stutz to bid more successfully. (Anthony Aff. ¶ 23.)

On or about 21 January 1998, Ms. Anthony received a notice of bumping displacement rights and the bumping policy from Stacy Coleman of Human Resources. (Coleman depo. pp. 17–19; Exhibit 2). The bumping policy allows a Sprint employee to displace an incumbent employee with less seniority. Ms. Anthony claims she did not attempt to exercise her bumping rights because the policy indicated that she forfeited her rights as a result of the disciplinary action for absenteeism. (Anthony Aff. ¶ 24.) Ms. Anthony maintains that had she been able to exercise her bumping rights, she could have displaced several more junior employees. (Anthony Aff. ¶¶ 22, 24.)

Ms. Anthony's last day of employment with Sprint was 30 January 1998. (Anthony depo. III pp. 85–86.) Sprint gave Ms. Anthony a severance package that included 47 weeks of full pay, payment for her unused and accrued vacation, full health care benefits, and telephone concession through 31 December 1998. (Anthony depo. III pp. 83–85, Ex. SS.)

## III. PLAINTIFF'S OBJECTIONS

Under Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court reviews de novo the portion of the Magistrate Judge's R & R to which specific objection was made.

Plaintiffs make the following objections to the R & R:

1. the Magistrate Judge failed to properly apply the summary judgment standard set forth in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

2. Magistrate Judge Vecchiarelli erred in finding that there is no direct evidence of disability discrimination.

3. The Magistrate Judge erred in finding that Cathy Anthony was "not qualified" for her position because of attendance issues.

4. The Magistrate Judge erred in viewing the defendant's proffered reason for discharging Cathy Anthony—excessive absenteeism—as a legitimate and lawful reason.

5. Magistrate Judge Vecchiarelli erred in dismissing Cathy Anthony's failure to accommodate ADA claim.

6. Magistrate Judge Vecchiarelli erred in finding that Ohio Revised Code Section 4112 does not cover affiliation claims.

7. The Magistrate Judge applied improper evidentiary standards in dismissing

Cathy Anthony's claim for emotional distress.

Plaintiffs do not object to the Magistrate Judge's recommendation that summary judgment be granted to Sprint on (1) all of Oliver Anthony's claims; (2) plaintiffs' FMLA claims; (3) plaintiffs' breach of contract claim and (4) the plaintiffs' violation of Ohio public policy claim. Although plaintiffs' objections to the R & R are often unclear and confused, the Court has addressed them in what seems to be the most logical manner.

## IV. STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, summary judgment is appropriate if the evidence in the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has further explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party bears the burden of proof in the case, the initial burden on the moving party under Rule 56 "may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087 (6th Cir.1996).

"When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The "mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but "conclusory allegations standing alone will not defeat a properly supported motion for summary judgment." *White v. York Int'l Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

## V. ANALYSIS

### A. *ADA Claims.*

The ADA provides that a covered employer may not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and any other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Unlawful disability discrimination under the ADA also includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

Ms. Anthony alleges two distinct claims against Sprint. She claims that Sprint discriminated against her in violation of the ADA based on (1) her own disability under the Act, by disparate impact and failure to accommodate and (2) her association with her disabled son Oliver. The Court will examine the claims separately.

### 1. *Ms. Anthony's Disability Claim.*

■ To recover on a claim of employment discrimination based on the employee's disability under the ADA and Ohio law,[1] the plaintiff must show that he or she: (1) is disabled within the meaning of the Act; (2) is otherwise qualified for the job, with or without reasonable accommodation; and (3) suffered an adverse employment decision because of his or her disability. See *Monette v. Electronic Data Systems*, 90 F.3d 1173, 1178 (6th Cir.1996). An individual seeking redress for alleged discrimination under the ADA can proceed by presenting direct evidence of discrimination, or by introducing indirect or circumstantial evidence of discrimination, sufficient to establish a prima facie case or presumption of discrimination.

Where a plaintiff uses the indirect method of proof by establishing a prima facie case of discrimination, the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Monette*, 90 F.3d at 1185–86. Under the burden shifting approach of the *McDonnell Douglas* formula, if the employer articulates a legitimate, nondiscriminatory reason for the employment action,

the burden shifts back to the plaintiff to show that the employer's stated reason is pretextual by providing evidence from which a jury could determine that the adverse action was based solely on the employee's disability. *Monette*, 90 F.3d at 1185–86. Where the plaintiff chooses the direct method of proof, the burden does not shift to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* at 1180. Instead, the employee must show that the adverse action was based solely on his or her disability. *Id.*

It is not clear from Ms. Anthony's objections whether she is arguing that there is direct evidence that Sprint discriminated against her on the basis of her own disability. The evidence she presents, however, are comments that reference Oliver's, not Ms. Anthony's, disability. The Court, therefore, will address Ms. Anthony's direct evidence claim under her association claim and examine her claim here based on her circumstantial evidence.

A plaintiff establishes a prima facie case of disability discrimination by showing that: (1) he or she is disabled; (2) he or she is otherwise qualified for the position, with or without reasonable accommodation; and (3) he or she suffered an adverse employment decision. See *Monette*, 90 F.3d at 1186.

Ms. Anthony claims that Sprint discriminated against her based on her own disability. The Magistrate Judge did not determine whether Ms. Anthony was actually disabled within the meaning of the ADA. Instead, the Magistrate Judge concluded that Ms. Anthony had not established a

---

**1.** Because the essential elements of an ADA claim based on the employee's disability and a claim under the Ohio handicap discrimination statute are the same, the analysis of Ms. Anthony's ADA claim based on her own disability also resolves her handicap discrimina

tion claims under Ohio law. *Wohler v. Toledo Stamping & Mfg. Co.*, 125 F.3d 856, 1997 WL 603422, *2 n. 1 (6th Cir.1997); *Hoffman v. Fidelity Brokerage Servs., Inc.*, 959 F.Supp. 452, 457 n. 1. (S.D.Ohio 1997).

prima facie case because she has not shown that she is a qualified person under the act. The Magistrate Judge also determined that, even if Ms. Anthony had established a prima facie case, Sprint had asserted a legitimate, non-discriminatory reason for the adverse employment action, and that Ms. Anthony had failed to show that Sprint's asserted legitimate reason was pretextual. Ms. Anthony objects to each of these conclusions.

### a. *"Qualified Individual" under the Act.*

■ For purposes of reviewing Ms. Anthony's objections to the R & R, the Court will assume, as did the Magistrate Judge, that Ms. Anthony is "disabled" and within the ADA's protected class. To establish a prima facie case of discrimination based on her disability, Ms. Anthony must show that she is a "qualified individual with a disability". The regulations define a "qualified individual with a disability" as "an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential function of such position." 29 C.F.R. § 1630.2(m). See also *Burns v. Coca–Cola Enterprises, Inc.*, 222 F.3d 247, 257 (6th Cir.2000).

Ms. Anthony objects to Magistrate Judge Vecchiarelli's conclusion that her ADA claim failed because she was unable to demonstrate that she was otherwise qualified and/or able to perform the essential function of the job. She argues that she was satisfactorily performing her job at the time of the adverse employment action despite her number of absences. She further objects to the Magistrate Judge's conclusion that attendance is an essential job function under Sixth Circuit law.

Ms. Anthony also claims that Sprint discriminated against her when it improperly disciplined her under the no-fault policy and failed to place her in another position in violation of company policies, which resulted in her not obtaining another position with Sprint. Sprint, on the other hand, maintains that it did not terminate Ms. Anthony because she was not qualified for the position she held prior to the reorganization. Sprint's position is that Ms. Anthony's job was eliminated when Sprint reorganized its human resources department, and she was not replaced by another employee and Sprint claims that Ms. Anthony was not qualified for any other positions with the company.

Ms. Anthony's objection misunderstands the Magistrate Judge's conclusions in the R & R. Although Magistrate Judge Vecchiarelli found that "Anthony was having some difficulties fulfilling the obligations of her position prior to the 1997 reorganization", she also recognized that Sprint was not disputing Ms. Anthony's qualifications for the position she held that was eliminated in the reorganization. R & R p. 17. Instead the Magistrate Judge found that Ms. Anthony was not qualified for the three positions for which Ms. Anthony bid after learning that her position with Sprint would be eliminated due to reorganization:

> Further, Anthony did not have the requisite knowledge for three of the jobs upon which she bid. Anthony was not qualified for the WFM Load Administrator position. (Anthony Dep. III at 61–67, Ex. OO). Anthony did not possess the requisite working knowledge of installation and repair and cable maintenance procedures and operations. (Anthony Dep. III at 63, Ex. OO.) Nor was Anthony qualified for two administrative assistants positions on which she bid. (Anthony Dep. III at 53–56, Ex. MM, NN.) Anthony was unable to type a minimum of 50 words per minute as re-

quired for both positions. (Anthony Dep. III at 54–56.) Further, one of the positions required that she be "knowledgeable to Service Orders, meaning of all FIDS, including new installation, auxiliary, listing, captions and complex captions." (Anthony Dep. III, Ex. MM.) Although Anthony knew what Service Orders were, she did not know what FIDS were. (Anthony Dep. III at 60.) R & R p. 17. Ms. Anthony does not set forth any objection to the Magistrate Judge's conclusion that she was not qualified for these positions.

Ms. Anthony does argue that there was at least one job for which she was qualified, but which was not properly posted according to company procedures. She maintains that Demaris Rose was placed in a security job that should have been posted. Ms. Anthony argues in her objection that Sprint's failure to post the job is evidence of pretext. Pretext, however, is irrelevant if Ms. Anthony cannot establish the second element of her prima facie case—that she was qualified for the positions she sought.

On de novo review of the record, the Court finds that Ms. Anthony has not submitted sufficient evidence from which a jury could determine that she was qualified for the security position. Ms. Ann Herr, Sprint's Director of Human Resource Operations for the North Central region at the time in question, testified that the "decision to put Demaris on the job was primarily based on the fact that we believed she was the most qualified." (A. Herr depo. p. 18.) Although Ms. Ann Herr admitted that Ms. Anthony had prior security experience, neither Ms. Ann Herr nor any other Sprint employee testified that Ms. Anthony was qualified for the security position. The only evidence that Ms. Anthony is qualified for this position comes from Ms. Anthony herself.

Furthermore, in her affidavit Ms. Anthony testifies that Ms. Ann Herr told her that "because of [her] absence over the past five years, [she] was not considered dependable." (Anthony Aff. ¶ 28.) Ms. Anthony cites *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775 (6th Cir.1998), for the proposition that regular attendance at work is not an essential job function. *Cehrs*, contrary to Ms. Anthony's assertion, merely stands for the proposition that extended medical leave may be a reasonable accommodation under certain circumstances. *Id.* at 783 (pattern of attendance in which plaintiff had not requested extended medical leave during the last 8 years created genuine issue of material fact as to whether granting further medical leave would have been a reasonable accommodation). Sprint is certainly entitled to consider dependable job attendance an essential job function for a security position. Moreover, there is no evidence that Ms. Anthony ever requested that Sprint consider her absences as a "reasonable accommodation" in the security position. Under the ADA, an employee is required to suggest a reasonable accommodation to the employer. *Id.* at 781.

Ms. Ann Herr also testified that the job was not posted "because at the time the position was not a full-time [sic], it was not a regularly approved position. We didn't have a head count for it. That we had simply displaced a contractor who was doing that work." (A. Herr depo. p. 17.) Other than her conclusory statement in her affidavit that company policy required Sprint to post the position, Ms. Anthony has provided no evidence that contradicts Ms. Ann Herr's testimony.

Finally, Ms. Anthony claims that she was eligible to bump less senior employees in positions involving the clerical/administrative skills she possessed. In particular she claims that Stacy Coleman, Human

Resources Administrator for Sprint, "admitted that there were many positions where [Ms. Anthony], with over twenty years seniority, could have bumped less senior employees." (Plaintiffs' Objections to R & R, p. 8.) However, Ms. Anthony misquotes Ms. Coleman's testimony. Coleman testified that she was "pretty sure that [Ms. Anthony] could have requested to bump in a variety of different positions." According to Ms. Coleman, once Ms. Anthony would have requested to bump into a position, Ms. Coleman "would have to make an assessment if [Ms. Anthony] had those skills to do that job." Sprint's policy was that an employee bumping into a position "must have previously recognized experience in the position she was requesting to bump into and have the current applicable skills to do the job and be able to do that job on day one with no training. And then she must be performing at a satisfactory or better level." (Coleman depo. pp. 19–21.) In support of her claim that she was qualified for these positions, Ms. Anthony relies only on her own affidavit which states that she "could have bumped Demaris Rose, Inez Crow and Deb Earlinson." This conclusory statement, however, is not sufficient evidence from which a trier of fact could conclude that she was qualified for these positions.

Ms. Anthony has not provided sufficient evidence from which a jury could determine that she is a qualified individual under the Act. Therefore, she has not established a prima facie case of employment discrimination based on her alleged disability and Sprint is entitled to summary judgment on this claim.

Moreover, because Ms. Anthony has not established a prima facie case of disability discrimination, the Court need not address her objection to the Magistrate Judge's conclusion that Sprint articulated a legitimate nondiscriminatory reason for the ad-verse employment action or that Ms. Anthony failed to provide evidence that Sprint's articulated nondiscriminatory reason was pretextual; her objection that the Magistrate Judge's application of *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) in the context of analyzing "pretext" was incorrect; or her objection to the Magistrate Judge's conclusion that Sprint failed to reasonably accommodate her. (Objections No. 1, 4 and 5.)

### 2. *Ms. Anthony's Association Claim.*

Ms. Anthony also claims that Sprint discriminated against her in violation of the ADA by impermissibly firing her because of her known association with a disabled person—her son Oliver. Unlawful disability discrimination under the ADA includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

There are few appellate cases that have been decided under the association provision of the ADA, and none have been decided by the Sixth Circuit. See *Den Hartog v. Wasatch Academy,* 129 F.3d 1076, 1083 (10th Cir.1997); *Tyndall v. National Educ. Ctrs., Inc.* 31 F.3d 209 (4th Cir.1994). To recover on a claim of employment discrimination based on an association with a disabled person under the ADA, the plaintiff must show that (1) the employee has a known association with a person who is known to be disabled within the meaning of the Act; (2) the employee is otherwise qualified for the job; and (3) the employee was excluded or otherwise denied equal jobs or benefits because of the disability of the person with whom they have a known association. 42 U.S.C. § 12112(b)(4). See also *Den Hartog,* 129

F.3d at 1083; *Monette v. Electronic Data Systems,* 90 F.3d 1173, 1178 (6th Cir.1996). Under an ADA claim for discrimination based on an association with a disabled person, the employer is not required to make a reasonable accommodation to the employee or the disabled person. *Den Hartog,* 129 F.3d at 1084–85; *Tyndall* 31 F.3d at 214.

■ Ms. Anthony claims that three statements made to her by Sprint employees are evidence of disability discrimination based on her association with her son Oliver. Ms. Anthony presents evidence of these three statements in her affidavit:

Sprint management made comments to me that indicated its disapproval of my taking FMLA leave to care for my disabled son. On or about September 4, 1996, I had a meeting with Sprint's EEO Manager Betty Merritt because I was having problems with my Supervisor, Rachel Greibling about taking the FMLA protected absences to care for my son. Merritt told me that I should consider placing my son in a group home since I needed my job. Merritt told me that I could see my son on weekends.

On or about January 5, 1998, Sprint's Manager of Relations Tom Meehan called me into a meeting in his office. Meehan told me that I should get someone to take care of my son. he told me that this was an issue that would prevent me from getting another job at Sprint or with another company. Meehan told me about his own son with a disability and commiserated about the stress it caused. A true copy of my contemporaneous notes of the conversation are attached to Exhibit 8.

On or about January 19, 1998, I met with Human Resource Director Ann Herr because of not receiving the security job given to Demaris Rose. A copy of an e-mail exchange between us dated January 5 and 7, 1998 is attached as Exhibit 9. Herr told me that because of my absence record over the past five years, I was not considered dependable. Most of my absences were protected absences under the FMLA. Herr told me that I should get someone to take care of my son. She told me that she had to choose between her job and her family. Herr told me that she had hired a nurse to take care of her disabled husband so that she would not miss work. A true copy of my contemporaneous notes of this conversation are attached as Exhibit 10.

(Anthony Aff. ¶¶ 26–28.)

### i. *Direct Evidence.*

Ms. Anthony claims that these statements are direct evidence of discrimination. As stated earlier, introducing direct evidence of disability discrimination is simply one method of proof of a discrimination claim. *Monette,* 90 F.3d at 1186. Where an employer admits that the adverse employment action was taken because of the employee's disability, or association with a disabled person, the plaintiff is not required to prove discrimination by establishing a prima facie case through circumstantial evidence, and the *McDonnell Douglas* burden shifting formula does not apply. *Id.* at 1184–86. If an employee shows direct evidence of discrimination, the employee must then show that the adverse action was based solely on the disability. *Id.* at 1180.

Direct evidence of discrimination is the equivalent of an employer stating "I fired you because you are disabled." *Smith v. Chrysler Corporation,* 155 F.3d 799, 805 (6th Cir.1998). In other words, "[d]irect evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor" in the adverse employment action. *Weberg v. Franks,* 229 F.3d 514, 524 (6th Cir.2000). The evidence must prove the

existence of a fact without inferences or presumptions. *Norbuta v. Loctite Corp.,* 181 F.3d 102 (6th Cir.1999). If the evidence requires the jury to infer a fact, it is not direct evidence. *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1081 (6th Cir.1994).

The statements submitted by Ms. Anthony are not direct evidence of discrimination. The statements do not compel a conclusion that Sprint's employment action was motivated by Ms. Anthony's association with Oliver. There is no direct statement or admission by any of the Sprint employees that she was disciplined or not given continued employment with Sprint because of her association with Oliver. Each statement would require the finder of fact to infer that Ms. Anthony's association with Oliver was a motivating factor in Sprint's decision not to place her in another position with the company after the reorganization, or in Sprint's decision to her discipline her for her absences.

Only Meehan's statement that if she didn't get someone to care for Oliver, it "would prevent [her] from getting another job with Sprint", comes close to qualifying as direct evidence. Even this statement, however, does not compel the conclusion that Oliver's disability was the reason for Sprint's adverse employment action, as one could equally infer that it was Ms. Anthony's absences that were at issue. Moreover, even if this statement was direct evidence of discrimination, for the reasons discussed in the next section, Ms. Anthony cannot show that her association with Oliver was the sole reason for her discipline. See *Monette,* 90 F.3d at 1180.

ii. *Indirect Evidence.*

■ Although the statements submitted by Ms. Anthony do not constitute direct evidence, she may rely on them as circumstantial evidence of discrimination in es-

tablishing her prima facie case of association discrimination under the *McDonnell Douglas* burden shifting formula. *Monette,* 90 F.3d at 1186. To establish a prima facie case of disability discrimination based on her association with Oliver, she must show that (1) she was qualified for the job at the time of the adverse employment action; (2) she was subjected to an adverse employment action; (3) Sprint knew that Ms. Anthony's son Oliver was disabled; and (4) the adverse employment action took place under circumstances raising a reasonable inference that Oliver's disability was a determining factor in Sprint's decision. *Den Hartog,* 129 F.3d at 1085.

■ Sprint does not contest that Oliver is disabled, that Ms. Anthony has an association with him, or that Ms. Anthony was subjected to an adverse employment action by not being selected for another position with Sprint or for being disciplined for her absences. Sprint maintains, and the Court has already discussed and concluded above, that Ms. Anthony was not qualified for the positions she sought or claims she should have been offered in the reorganized company. However, Sprint does not argue that Ms. Anthony was unqualified for the position she was in when her job was eliminated.[2] Therefore, Court must examine whether the statements Ms. Anthony presents raise an inference that she was disciplined because of her association with Oliver.

While these statements might under other circumstances raise an inference that Oliver's disability played a role in Sprint's decision to discipline Ms. Anthony, they do not raise such an inference under the circumstances in this case. None of the absences for which Ms. Anthony earned "occurrences" in 1997, the year in which the disciplinary action took place, were due to

---

**2.** Sprint does argue that she was properly disciplined for her absences.

Oliver's disability. Ms. Anthony took 52 days of FMLA leave during 1997 for her own health conditions and her final absence on 9 December 1997, for which she received the disciplinary action was because Ms. Anthony had the flu. In addition to the 52 days of FMLA-approved leave that Ms. Anthony took for her own health conditions in 1997, she took an additional 26 days for her own health conditions in November and December of 1997. Ms. Anthony took only 8 days of FMLA-approved leave for Oliver's health condition in 1997. (J. Herr Aff. Ex. E; Anthony depo. Vol. II pp. 21–22.)

Viewed under the circumstances of Ms. Anthony's absences in 1997, therefore, the fact that Sprint employees expressed concern about her absences and the illness of her son Oliver do not create an inference that Ms. Anthony was disciplined because of her association with Oliver. And, contrary to Ms. Anthony's assertions, many of her absences were not FMLA protected.

Finally, although argued in terms of direct evidence, Ms. Anthony implies in her objections that her "poor attendance record" should be viewed as an "ADA protected accommodation." (Docket No. 66.) Ms. Anthony, however, is confusing her ADA claims. Under the ADA, Sprint is not required to provide a reasonable accommodation for her association with a disabled person. *Den Hartog*, 129 F.3d at 1084–85; *Tyndall* 31 F.3d at 214.

Ms. Anthony, therefore, has neither shown direct evidence nor established a prima facie case of disability discrimination based on her association with her disabled son. Accordingly, Sprint is entitled to summary judgment on her association disability claim under the ADA.

B.  *Association Disability Claim under Ohio Law.*

Ms. Anthony objects to the Magistrate Judge's conclusion that Ohio law does not recognize a claim for disability discrimination based on an employee's association with a disabled person. The Sixth Circuit recently held that there is no association handicap discrimination claim under Ohio law. *Smith v. Hinkle Manuf., Inc.*, 36 Fed.Appx. 825 (2002):

The Americans with Disabilities Act prohibits discrimination against a "qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). The Ohio handicap discrimination statute contains no comparable prohibition against associational discrimination. See Ohio Rev.Code Ann. § 4112.02. And although Ohio courts sometimes look to federal law for guidance in disability discrimination cases, they do so only insofar as the ADA is "similar" to the Ohio law. *City of Columbus Civil Service Comm'n v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 206–07 (1998). The plaintiffs' [associational discrimination] claim under Ohio Rev.Code § 4112.02(A) has no merit.

*Id.* Sprint is entitled to summary judgment on this claim.

C.  *Intentional Infliction of Emotional Distress.*

Finally, Ms. Anthony objects to Magistrate Judge Vecchiarelli's conclusion that her claim for intentional infliction of emotional distress under Ohio law fails.

▇▇  Ohio recognizes a claim for intentional infliction of emotional distress where "one who by extreme and outrageous conduct intentionally or with reckless disregard causes severe emotional distress to another." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, at syllabus (1983). To establish a claim of intentional infliction of emotional distress, a plaintiff

must show (1) defendant intended to cause the plaintiff emotional distress or knew or should have known its actions would result in serious emotional distress to the plaintiffs; (2) defendant's conduct was outrageous and extreme; (3) defendant's actions proximately caused the plaintiff's emotional injury; and (4) plaintiff suffered serious emotional anguish. *Id.; Dickerson v. Int'l United Auto Workers Union,* 98 Ohio App.3d 171, 178, 648 N.E.2d 40 (1994).

An emotional injury is severe when "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759 (1983), at syllabus ¶ 3a. As described by the Supreme Court of Ohio, liability is only appropriate

> where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Yeager,* 6 Ohio St.3d at 375, 453 N.E.2d 666 (quoting Restatement of the Law 2d, Torts (1965) 71, Section 46(1)).

Ohio courts have also repeatedly held that in order to avoid summary judgment a plaintiff claiming severe emotional distress must present some "guarantee of genuineness" in support of his or her claim. *Powell v. Grant Medical Center,* 148 Ohio App.3d 1, 3, 771 N.E.2d 874 (2002). Under Ohio law, expert testimony regarding the severity of the alleged emotional distress "is helpful in proving the genuineness of a plaintiff's claim", but is not indispensable. *Id.* Instead of expert testimony, a plaintiff may submit the testimony of lay witnesses who are acquainted with the plaintiff and who can testify to any "marked changes in the emotional or habitual makeup" of the plaintiff following a defendant's allegedly culpable conduct. *Id.*

■ In her R & R, Magistrate Judge Vecchiarelli addressed only the fourth element of Ms. Anthony's claim—the severity of her alleged emotional anguish—and determined that her claim failed because she provided no expert or lay witness testimony regarding the evidence of her emotional injury. Ms. Anthony claims that expert testimony is not required to prove severe emotional distress, and that her affidavit in which she testifies "at length about her debilitating and diagnosed depression which has required medical treatment" is sufficient evidence to withstand a motion for summary judgment. (Docket No. 66, p. 10.)

The Court agrees with Magistrate Judge Vecchiarelli. Ms. Anthony has submitted neither expert testimony nor the testimony of lay witnesses who are acquainted with her and can testify that Ms. Anthony suffered the kind of severe emotional response required under Ohio law for a claim of intentional infliction of emotional distress. Her own affidavit does not provide the "guarantee of genuineness" necessary to survive a motion for summary judgment. Therefore, Sprint is entitled to summary judgment on Ms. Anthony's claim for intentional infliction of emotional distress.

## VI. CONCLUSION

For the reasons stated above, the Court concludes that defendant is entitled to summary judgment on all counts.

IT IS SO ORDERED.