COLUMBIA PLAZA MEDICAL CENTER OF FORT WORTH SUBSIDIARY, L.P.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-01-394-CV

COLUMBIA PLAZA MEDICAL CENTER APPELLANT

OF FORT WORTH SUBSIDIARY, L.P. 

V.

CAROL SZUREK APPELLEE

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

On November 13, 1998, appellee Carol Szurek filed suit against appellant Columbia Plaza Medical Center of Fort Worth Subsidiary, L.P. (“Columbia”) for employment discrimination based on her perceived disability, pursuant to the Texas Commission on Human Rights Act [“TCHRA”].
(footnote: 1)  
Tex. Labor Code Ann.
 § 21.002(6) (Vernon Supp. 2003).  The jury found that Columbia regarded Szurek as having a disability that substantially limited her ability to perform a broad class of jobs and that it discriminated against her based on this perceived disability.  The jury also awarded Szurek $72,000 in damages, and the trial court rendered judgment accordingly.  We reverse and render. 

II.  Factual Background

In 1986, Szurek began working for St. Joseph’s Hospital as a medical technologist in its microbiology department.  St. Joseph’s merged with Columbia in 1994, and its facilities closed in July 1995.  Szurek then began working at Columbia Plaza Medical Center.

Because of budgetary issues, Columbia required medical technologists to cross-train in a second area of the hospital.  Szurek cross-trained in the hematology department, which required her to work more time on her feet than  in the microbiology department.  An average eight-hour shift in microbiology could involve anywhere from forty-five minutes to two hours of walking and standing to as much as forty percent of the entire shift walking and standing.
(footnote: 2) Medical technologists were also required to spend part of one shift per month moving throughout the hospital collecting blood.

On February 14, 1996, Szurek had foot surgery for heel spurs and took six weeks off from her position with Columbia to recover.  Before she returned, she told her supervisor, Gail Hightower, that she could stand for only ten to twenty minutes and needed significant periods of rest.  Further, after the recovery period, Dr. Lawrence Warren, Szurek’s podiatrist, allowed her to return to work on condition that she perform sedentary duties only pending full recovery.  As a result of this restriction, Columbia limited Szurek to working only in the microbiology department.  While this position was not completely sedentary, it involved less standing and walking than working in the hematology department.  Szurek returned to work on April 1, 1996.

In July, Hightower asked Szurek to obtain a status report on her recovery from Dr. Warren.  In a letter dated August 7, 1996, Dr. Warren stated that Szurek had reached a “recovery plateau.”  Although Szurek had improved since her surgery, Dr. Warren stated that she continued to have foot and ankle pain, and as a result, “it is necessary that [she] perform sedentary activities at work for a period of time for three months.”  Dr. Warren explained that he would re-evaluate her condition after three months, but warned that altering from sedentary work “could result in loss of the improvement that has been accomplished.”

Based on Dr. Warren’s letter, Connie Sims, Columbia’s Employee Health Coordinator, looked into Szurek’s working conditions in the microbiology lab and determined that there were no completely sedentary positions available in the lab, including the position Szurek had filled since her return.  Sims testified that she interpreted Dr. Warren’s letter to state that Szurek’s recovery plateau was the result of her performing nonsedentary work.  As a result, in order to avoid risking a set-back in Szurek’s recovery, Sims believed that Szurek could not work in microbiology until further notice from her doctor.

Sims sent a memorandum to Paul Benson, Columbia’s Vice President of Human Resources, explaining her interpretation of Dr. Warren’s letter.  In the memo, Sims suggested that Szurek be placed on a leave of absence for “three months AND until a full release is given by her attending physician.”  She stated that there were no sedentary positions in the microbiology department and that the department was not required to accommodate for a “temporary restriction.”

Based on this memo and a conversation with those in charge of the microbiology department, Benson placed Szurek on a three-month leave of absence, fully expecting that she would recover and return to work.  Benson testified that he did not perceive Szurek as permanently disabled or that she was asking for permanent accommodations.  According to Benson, all the information he had reviewed suggested she was recovering from surgery and was under a temporary condition, not a permanent disability.  Thus, Benson did not believe that Columbia was required to accommodate her because of her “temporary impairment.”

On November 15, 1996, Szurek filed a claim with the Fort Worth Human Relations Commission and the Equal Employment Opportunity Commission, alleging that Columbia had discriminated against her based on a “perceived disability.”  After an investigation, the Fort Worth Human Relations Commission determined that there was no evidence of discrimination.  The EEOC, on the other hand, determined that there was reasonable cause to believe Columbia had discriminated against Szurek when it failed to accommodate her “perceived disability.”

In the beginning of December 1996, Columbia contacted Szurek about returning to work.  Szurek then met with Sims, Hightower, and Betty West, an 

employee in the human resources department, and was asked if she would consider cross-training in the blood bank, which involved less standing and walking than hematology.  After agreeing to rotate between microbiology and the blood bank, Szurek returned to work at Columbia on March 27, 1997.  She continued to work at Columbia for another year without incident, until she resigned from her position with Columbia, allegedly over a salary dispute.

III.  Perceived Disability Discrimination
    

In Columbia’s first issue, it argues the trial court erred in not granting its motion for directed verdict on Szurek’s perceived disability cause of action.  It claims there is no evidence in the record supporting a finding that it involuntarily placed Szurek on a leave of absence because it perceived that she suffered from a disability as defined under the TCHRA.  

In determining a “no-evidence” issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary.  
Bradford v. Vento, 
48 S.W.3d 749, 754 (Tex. 2001)
; Cont’l Coffee Prods. Co. v. Cazarez, 
937 S.W.2d 444, 450 (Tex. 1996);
 In re King's Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).  Anything more than a scintilla of evidence is legally sufficient to support the finding.  
Cazarez,
 937 S.W.2d at 450;
 Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996).

A “no-evidence” issue may only be sustained when the record discloses one of the following:  (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez,
 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)),
 cert. denied
, 526 U.S. 1040 (1999).  There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact.  
Orozco v. Sander
, 824 S.W.2d 555, 556 (Tex. 1992).

Under section 21.002 of the labor code, a disability is defined as “a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or
 being regarded as having such an impairment
.”  
Tex. Labor Code Ann.
 § 21.002(6) (emphasis added).  A “major life activity” is considered akin to “caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.”  
Union Carbide Corp. v. Mayfield
, 66 S.W.3d 354, 360 (Tex. App.—Corpus Christi 2001, pet. denied).

The Texas Supreme Court has stated that a disability as contemplated by the TCHRA “must be one which is generally perceived as severely limiting [the plaintiff] in performing work-related functions in general.”
  Chevron Corp. v. Redmon
, 745 S.W.2d 314, 318 (Tex. 1987).  The 
Redmon
 court further stated:

An examination of the entire Act in the Human Resources Code reveals that the legislature was concerned with those physical and mental defects which are serious enough to affect a person's use of public facilities and common carriers, ability to obtain housing, and the ability to cross the street.  The intent of the Act was to protect those impaired to the point that they might not be able to participate in the social or economic life of the state, achieve independence, or become gainfully employed, without this protection.  The legislature obviously was not concerned with minor physical or mental defects.

Id.
 at 317.  In determining if a person is substantially limited in a major life activity we consider:  (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact, of or resulting from the impairment.
 
 
Union Carbide Corp.
, 66 S.W.3d at 360;
 Garcia v. Allen
, 28 S.W.3d 587, 596 (Tex. App.—Corpus Christi 2000, pet. denied); 
Norwood v. Litwin Eng’rs & Constructors, Inc.
, 962 S.W.2d 220, 224 (Tex. App.—Houston [1
st
 Dist.] 1998, pet. denied) (quoting 29 C.F.R. § 1630.2(j)(2) (1995)).  To be considered a disability, the “
impairment’s impact must . . . be 

permanent or long-term.”  
Toyota Motor Mfg., Inc. v. Williams
, 534 U.S. 184, 122 S. Ct. 681, 691 (2002);
 see also Hamilton v. Southwestern Bell Tel. Co.
, 136 F.3d 1047, 1051 (5th Cir. 1998) (“We have noted that ‘[t]he EEOC regulations provide that temporary, non-chronic impairments of short duration, with little or no permanent long-term impact, are usually not disabilities.’”) (quoting 
Rogers v. Int’l Marine Terminals, Inc.
, 87 F.3d 755, 759 (5th Cir. 1996)); 
Garcia
, 28 S.W.3d at 596 (“In determining if one is substantially limited in a major life activity,” one factor to consider is the “duration or expected duration of the impairment.”).   

Under the TCHRA, an individual need not actually have an actual physical impairment as defined above in order to state a claim, as long as that individual is “regarded as having such an impairment.”  
Tex. Labor Code Ann.
 § 21.002(6); 
see also Francis v. City of Meriden
, 129 F.3d 281, 284 (
2d Cir. 1997) (discussing the Americans with Disabilities Act (“ADA”) and the federal Rehabilitation Act of 1973 (“RHA”)).  Rather, an individual is covered by the “regarded as” prong of the definition of disability in the TCHRA if she “has none of the impairments defined in [the definition of the term 'impairment'] but is treated by a covered entity as having a substantially limiting impairment.”
(footnote: 3) 
Franci
s, 129 F.3d at 284 (quoting 29 C.F.R. § 1630.2(l) (involving the ADA)).  As a result, we look to the employer's perception of the employee, which involves a question of intent, not to whether the employee has an actual disability.
  See, e.g., id.

In determining what an employer perceived, a plaintiff must allege and show that his employer regarded him as having an “impairment” within the meaning of the applicable disability statute, in this case, the TCHRA.  
See Bailey v. Georgia-Pac. Corp., 
306 F.3d 1162,1169 (1st Cir. 2002); 
Rinehimer v. Cemcolift, Inc.
, 292 F.3d 375, 380-81 (3d Cir. 2002);
 Francis
, 129 F.3d at 286; 
Andrews v. Ohio
, 104 F.3d 803, 809-10 (6th Cir. 1997).  A plaintiff cannot state a claim under the “regarded as” prong simply by alleging that the employer believes some physical condition, such as height, weight, or hair color, renders the plaintiff disabled.  
Francis
, 129 F.3d at 285.  Rather, the plaintiff must show that the employer believed, however erroneously, that the plaintiff suffered from an “impairment” that, if it truly existed, would be covered under the statutes and that the employer discriminated against the plaintiff on that basis.  
See id.
; 
Andrews
, 104 F.3d at 810.  Thus, to be considered “disabled” under the “regarded as” prong, a plaintiff must show that the employer regarded the employee to be suffering from an impairment within the meaning of the TCHRA, not just that the employer believed the employee to be somehow disabled.

A temporary impairment, such as recuperation from surgery, will generally not qualify as a disability. 
See, e.g., Pollard v. High’s of Baltimore, Inc.
, 281 F.3d 462, 468 (4th Cir.) (citing 29 C.F.R. § 1630.2(j)), 
cert. denied
, 123 S. Ct. 122 (2002).  An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time.  
Id.
 (relying on 
Toyota Motor Mfg.
, 534 U.S. 184, 122 S. Ct. at 691).  The United States Supreme Court has also held that corrective measures must be taken into account when evaluating an individual's impairment.  
Sutton v. United Air Lines, Inc.
, 527 U.S. 471, 482, 488-89, 119 S. Ct. 2139, 2146-47, 2149-50 (1999).  As the Fourth Circuit has explained, “If an individual's ability to correct an impairment must be considered, it seems clear that the individual's likelihood of recovery from a temporary impairment must also be considered.”  
Pollard
, 281 F.3d at 468.  Several federal courts have taken this view.  
See, e.g., Gutridge v. Clure
, 153 F.3d 898, 901-02 (8th Cir. 1998) (holding that plaintiff's inability to work while recovering from wrist and elbow surgery did not qualify as a disability under the ADA and noting that “the ADA requires permanent or long-term impairment”), 
cert. denied
, 526 U.S. 1113 (1999);
 Heintzelman v. Runyon
, 120 F.3d 143, 144-45 (8th Cir. 1997) (holding same with regard to a temporary back injury); 
Rogers
, 87 F.3d at 759 (holding same with regard to recovery from ankle injury and surgery); 
McDonald v. Pennsylvania
, 62 F.3d 92, 95-96 (3d Cir. 1995) (holding same with regard to recuperation from abdominal surgery); 
Evans v. City of Dallas
, 861 F.2d 846, 852-53 (5th Cir. 1988) (holding same under the Rehabilitation Act of 1973 with respect to inability to work due to knee surgery).

While we presume that temporary impairments do not qualify as disabilities, we still must examine temporary conditions on a case-by-case basis.  
Pollard
, 281 F.3d at 468.  “Temporary disabilities present a spectrum of cases and at some point the duration of an impairment could be so long that it cannot properly be characterized as temporary.”  
Id.
  Factors we consider in determining whether the temporary condition may be perceived as a substantial limitation include the severity of the particular impairment, the length of time the impairment was expected to last, and the likelihood that the impairment would be ameliorated over time.  
Id.
  An approximate three-month period of recovery following surgery for heel spurs is not so long a period of time that it could be considered permanent.  
See Sanders v. Arneson Prods., Inc.
, 91 F.3d 1351, 1354 (9th Cir. 1996) (holding plaintiff's four-month temporary impairment was too brief to be a “disability”), 
cert. denied
, 520 U.S. 1116 (1997).

The evidence in this case shows that Columbia at most perceived that Szureck was recovering from a temporary impairment, which resulted from her surgery for spurs.  Columbia officials believed Szurek would be able to return to her normal working routine in approximately three months, or at least when Dr. Warren gave her clearance to return to nonsedentary duties.  The fact that Columbia officials perceived that her “recovery plateau” prevented her from doing the physical requirements of her current position and all nonsedentary positions does not show that they regarded her as having a disability as defined under the statute.  The evidence shows that Columbia officials saw the “plateau” as temporary, which could be overcome in a matter of months, but could not be overcome if Szurek continued to work in nonsedentary positions against her doctor’s advice.
 
 Dr. Warren’s letter, which Columbia was entitled 

to rely on in making decisions regarding what Szurek’s impairment entailed and whether she could continue to work in certain positions, supported this conclusion.  
See Rogers
, 87 F.3d at 760 n.3;
 Rios v. Ind. Bayer Corp.
, 965 F. Supp. 919, 924 (S.D. Tex. 1997).  

Szurek did not introduce or present to this court evidence showing that Columbia perceived her injuries to be anything other than temporary.  Further, there is no evidence indicating that Columbia believed there would be any long-term or permanent impact resulting from Szurek’s impairment.  Because a temporary impairment is not considered a “substantially limiting impairment,” and because Columbia perceived Szurek’s impairment as temporary, there is no evidence that Columbia placed Szurek on the leave of absence because it regarded her as disabled.
  See Rinehimer
, 292 F.3d at 380-81 (holding employer did not regard employee as disabled where employer thought employee suffered from pneumonia, which is a temporary condition not protected by the ADA); 
Sutton v. Lader
, 185 F.3d 1203, 1209 (11th Cir. 1999) (holding employer that prevented employee from returning to work until physician provided medical release did not regard employee who was recovering from heart surgery as disabled under RHA, stating “employee who is perceived by his employer as having only a temporary incapacity to perform the essential functions of his job is not perceived as ‘disabled’”).  Thus, we hold the trial court erred in denying Columbia’s motion for directed verdict and sustain issue one.
(footnote: 4)  In light of our decision on issue one, there is no need for this court to address Columbia’s remaining issues on appeal.  
See
 
Tex. R. App. P. 
47.1.

IV.  Conclusion

Having sustained Columbia’s no-evidence issue, 
it is our duty to render judgment for Columbia because that is the judgment the trial court should have rendered.  
See
 T
EX
. R. A
PP
. P. 43.3; 
Vista Chevrolet, Inc. v. Lewis
, 709 S.W.2d 176, 176 (Tex. 1986) (quoting
 Nat’l Life & Accident Ins. Co. v. Blagg
, 438 S.W.2d 905, 909 (Tex. 1969)).  Thus, we reverse the trial court’s judgment and render judgment for Columbia.
 

SAM J. DAY

JUSTICE

PANEL B: CAYCE, C.J.; DAY and HOLMAN, JJ.

[DELIVERED: MARCH 6, 2003]

FOOTNOTES
1:
Szurek did not bring claims under federal law, and the trial court granted Columbia’s motion for directed verdict on her actual disability cause of action. 

2:
Szurek testified that an eight-hour shift in the microbiology department involved anywhere from forty-five minutes to two hours of walking and standing throughout the day.  Other witnesses testified that an employee could spend approximately forty percent of the shift walking and standing.

3:
Stated differently, “an employee is also regarded as having a substantially limiting impairment if his employer mistakenly believes the employee (1) has a physical impairment that substantially limits one or more major life activities, or (2) an actual, non-limiting impairment substantially limits one or more major life activities.”  
Haggar Apparel Co. v. Leal
, No. 13-00-275-CV, slip op. at 2, 2002 WL 31478172, at *2 (Tex. App.—Corpus Christi Nov. 7, 2002, pet. filed).  In other words, “[t]he employer must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.”  
Id.

 

4:
Although the EEOC’s determination of reasonable cause to believe that discrimination occurred was introduced into evidence, we accord it no weight in this case because the determination of the EEOC is based on an incorrect statement of the law.  In its determination, the EEOC stated that because its investigation revealed that Columbia failed to accommodate Szurek once it learned that Dr. Warren recommended she perform sedentary duties only, Columbia “perceived [Szurek] to have a disability that kept her from performing any jobs within their company.”  The duty to provide reasonable accommodations, however, “arises only when the individual is [actually] disabled; no such duty arises when the individual merely is ‘regarded as’ being disabled.”
  Cannizzaro v. Neiman Marcus, Inc.
, 979 F. Supp. 465, 475 (N.D. Tex. 1997).  Because the EEOC’s determination was based on an erroneous statement of the law, and because the independent facts at trial show no evidence of a “perceived disability,” we conclude the EEOC letter does not amount to more than a scintilla of evidence.
  Cf. Sims v. Oklahoma ex. rel. Dep’t of Mental Health
, 165 F.3d 1321, 1331 (10th Cir.),
 cert. denied
, 528 U.S. 815 (1999) (“[W]hen the independent facts before the district court judge [on a motion for summary judgment] fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one.”).