Holley **SPINKS**

v.

**TRUGREEN LANDCARE, L.L.C.**

**No. CIV.A. H–03–0025.**

United States District Court,
S.D. Texas,
Houston Division.

June 14, 2004.

James R. Mulroy, II, and Kelly S. Gooch, Lewis Fisher Henderson Claxton & Mulroy, LLP, Memphis, TN, for defendant.

## ORDER

GILMORE, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment, Statement of Undisputed Facts, and Supporting (Instrument No. 18). Based on the parties' submission and applicable law, the Court finds that this motion should be **GRANTED**.

### I.

Plaintiff Holley Spinks ("Plaintiff") brings this action against her former employer TruGreen Landcare, L.L.C. ("Tru-Green" or "Defendant"), alleging disability discrimination and retaliation, in violation of the Texas Commission on Human Rights Act ("TCHRA") Tex. Lab.Code Ann. § 21.051. On November 15, 2002 Plaintiff filed her original suit in the 55th Judicial District Court in Harris County, Texas. On December 11, 2002 Defendant was served with a copy of Plaintiff's Origi-

nal petition. On January 6, 2003 Defendant timely removed this suit to this Court based on diversity, pursuant to 28 U.S.C. §§ 1332 and 1441(a).

In Plaintiff's Original Petition she alleges that Defendant discriminated and retaliated against her in violation of the TCHRA, based on Plaintiff's disability or perceived disability or her association with persons with a disability or perceived disability. (Instrument No. 1, Exh. 2, at 3). Plaintiff specifically states that she "does not assert any federal claims" and that "Plaintiff is in no way seeking damages or remedies that may stem from a federal cause of action." (Id.). Plaintiff has not filed any amended complaints.

Plaintiff was hired in July 1993 by Earth Tone Development which was acquired by TruGreen in April 1999. (Instrument No. 18, at 2). Plaintiff was terminated by Tru-Green on October 1, 2001. Plaintiff worked in several positions with the company starting as a part-time receptionist and janitor to the business administrator for the branch manager. Ms. Spinks had worked for Defendant and its predecessor for over eight years, without any discipline notations in her employment record. (Instrument No. 21, at 4–5).

However, in July 2001 when Patrick Minor became Branch Manager, Ms. Spinks perceived that things changed for her. Ms. Spinks testified at her deposition that in August 2001, she began to have problems with Mr. Minor.

Q. What happened in August?

A. Several things. If I didn't get a report done, he would get his wife to do it. We had issues with the mail. I would report it to him. And they had to do with his wife. He told me that it wasn't on purpose, it was just an oversight on her part.

Ms. Spinks complained to several people about the fact that Mr. Minor's wife, Tara Minor, who worked at Defendant's district office next door to the branch office, was too involved with branch office business. (Instrument No. 18, Exh. 4, at 67). Plaintiff testified in her deposition that she believed that Mr. Minor's wife should not have input in the branch operations, because it was not her job. (Instrument No. 18, Exh. 4, at 66).

Plaintiff testified that she suffers from severe depression and that her daughter suffers from a cleft palate, resulting in three surgeries between December 1995 through April 1999. Plaintiff took her daughter to doctor prescribed speech therapy two times a week from 1998 to May 2001 as well as regularly scheduled doctor's visits. In addition, Plaintiff testified that her sister suffers from severe anxiety, which also required constant medical care and monitoring. Mr. Minor testified that he was aware of Plaintiff's daughter having a cleft palate, that Ms. Spinks told him she suffered from anxiety and depression and that her sister was not doing well, however he did not know what medical problems Ms. Spinks' sister had. (Instrument No. 21, at Exh. B, at 21–23).

On August 15, 2001, approximately 30 days after Mr. Minor became Plaintiff's full time supervisor, Ms. Spinks requested that she leave work early for a doctor's appointment. Mr. Minor allowed her to leave, but required Ms. Spinks to show him a doctor's note. (Instrument No. 21, at 6). On August 30, 2001, Mr. Minor verbally disciplined Plaintiff. Mr. Minor memorialized the verbal warning on an Employee Counseling Form:

SUMMARY OF THE PROBLEM: Unwillingness to work with fellow employees, branch, district, and regional levels

Poor attitude

Unwilling to work towards a team environment

CORRECTIVE ACTION NEEDED AND Change in work attitude toward fellow employees Work to create a team attitude

TIME FRAME: These things should happen immediately, and we will meet again in two weeks to discuss progress

(Instrument No. 21, at Exh. 1).

Plaintiff testified, that at that time, Mr. Minor told Plaintiff her job was in serious jeopardy and that she must do better or she could lose her job. (Instrument No. 18, Exh. 4, at 142). The counseling form did not list the fellow employees with whom Ms. Spinks was having problems nor did it list any details of any specific situations.

Plaintiff testified that on September 9, 2001, her sister was ill, suffering from severe anxiety and was hospitalized. Ms. Spinks went to Dallas to stay with her sister, with Mr. Minor's knowledge and returned to work a week later, on September 16, 2001. Pursuant to Mr. Minor's request Ms. Spinks gave Mr. Minor a doctor's note from her sister's doctor. (Instrument No. 21, at 7). On September 26, Ms. Spinks took time off work to take her daughter to speech therapy and gave Mr. Minor a note from the doctor prescribing the therapy. (Instrument No, 21, at 7).

On September 28, 2001, the last Friday in September, Plaintiff testified that she asked for "comp time" because she needed to work on the weekend to close the September books. Plaintiff did not tell Mr. Minor she needed help until that day. (Instrument No. 18, Exh. 4, at 166–67). Mr. Minor refused Plaintiff's request for comp time. Plaintiff did not work that weekend and failed to finish the end of the month books by Monday, October 1, 2001. (Instrument No. 18, at 10). On October 1,

2001 Mr. Minor called Plaintiff into the office and terminated her. Plaintiff's Termination Statement says, the Ms. Spinks was terminated because she was insubordinate toward her supervisor when she requested comp time, as well as her intentional failure to complete the end of the month work on time and her continued problems getting along with other employees of the branch and district offices. (Instrument No. 18, at 11).

On January 10, 2004, Defendant TruGreen filed a Motion for Summary Judgment, Statement of Undisputed Facts, and Supporting Authority. (Instrument No. 18). Defendant contends that Plaintiff is unable to present sufficient evidence to support the essential elements of her claims. Defendant asserts that Plaintiff cannot establish *prima facie* cases for disability discrimination or retaliation under the TCHRA and that Plaintiff cannot establish the elements of intentional infliction of emotional distress. Plaintiff has not asserted a claim for intentional infliction of emotional distress, however, Defendant raises this issue out of an abundance of caution. (Instrument No. 18, at 2).

Defendant notes that the standards applicable to determining whether an individual has a disability under the Americans with Disabilities Act ("ADA") are generally applied to actions claiming disability or perception of disability under the TCHRA. However, Defendant contends that unlike the ADA, the TCHRA does not have a specific provision prohibiting discrimination against individuals because they have a known association or relationship with a disabled individual. (Instrument No. 18, 13–14).

TruGreen argues that Plaintiff is unable to show that her depression and anxiety substantially limited her in a major life activity. Defendant points out that ac-

cording to her testimony, she had these conditions from the time she was a teenager, yet she has been able to maintain continuous employment, before, during and after her employment with TruGreen. (Instrument No. 18, Exh. 4 at 16–28, 83–85). TruGreen also contends that Plaintiff cannot show that she had a record of impairment as defined by the TCHRA. Defendant claims that Plaintiff's mere allegations that she suffered from anxiety and depression and that she took medication for those conditions is insufficient to establish a substantial impairment under the TCHRA. (Instrument No. 18, at 19)

Defendant asserts that Plaintiff also cannot show that she was regarded as having an impairment under the TCHRA. TruGreen asserts that the fact that a decision maker is aware of an employee's condition is insufficient to establish that the employer regards the individual as having an impairment that substantially limits a major life activity. (Instrument No. 18, at 22). Defendant also asserts that they had legitimate, non-discriminatory reasons for Plaintiff's termination. Namely, Defendant claims that Ms. Spinks' termination was based on Plaintiff's insubordination, client and co-worker complaints, lack of team effort, and demanding comp time after previous warnings. Defendant contends that Plaintiff admits that she received warnings due to these issues and accepted responsibility for not complying with job expectations. In an August 27, 2001 e-mail with an attached letter, Plaintiff concedes that "I need to work on some areas" and Ms. Spinks agrees to comply with the action plan stated in the Employee Counseling Form. (Instrument No. 18, Exh. 8, at 2). Defendant also claims that Plaintiff knowingly and deliberately failed to close the September books. (Id., at 24).

Defendant argues that Plaintiff cannot state a claim for retaliation under the TCHRA. According to TruGreen, Ms. Spinks has not made a showing that she engaged in any protected activity before the termination of her employment. The only complaint Plaintiff attempted to file prior to the termination of her employment, concerned nepotism-regarding Mr. Minor and his wife. Plaintiff was told by Carmen Zayas, TruGreen's region people service manager, that Mr. and Mrs. Minor were not violating company policy because neither of the two employees supervised the other and they worked in separate offices. (Instrument No. 18, at Exh. A). The only other allegation regarding her claim of retaliation, occurred after her termination. Plaintiff claims that someone at TruGreen sent a letter to her subsequent employer. Plaintiff testified that she did not know who sent the letter or what was the subject matter of the letter. (Instrument No. 18, Exh. 4, at 197–98). Defendant asserts that neither of these allegations support a claim for retaliation.

Finally, Defendant asserts that Plaintiff's allegations that Mr. Minor allowed his wife to interfere in the branch, that Mr. Minor required documentation of Ms. Spinks reasons for absence from work and that Mr. Minor required Ms. Spinks to make up work after absences are merely workplace disputes that are insufficient to establish intentional infliction of emotional distress. (Instrument No. 18, at 27).

On March 11, 2004 Plaintiff filed a Response in Opposition to Defendant TruGreen Landcare['s] Motion for Summary Judgment (Instrument No. 21). Plaintiff claims that only after Mr. Minor became her supervisor did he begin to treat Plaintiff more harshly and inconsistently when compared to employees without a disability, a perceived disability or association with a person with a disability. (Instrument No. 21, at 2). Plaintiff asserts that she has offered proof of a *prima facie* case

of discrimination, based on the way Mr. Minor treated her during the time she served as his business administrator. Plaintiff contends that "any reasons Defendant had for firing Plaintiff were purely pretextual, without support, discriminatory and in retaliation for engaging in a protected activity by requesting accommodations in the form of time off." Therefore, Plaintiff claims this Court should deny Defendant's motion for summary judgment. (Instrument No. 21, at 9).

Plaintiff claims that the major life activity affecting her was that of working. Ms. Spinks asserts that her disability is severe depression and that the individuals she associates with who are also disabled are her daughter, who has a cleft palate and her sister who suffers from severe anxiety. Plaintiff also asserts that the fact that Ms. Spinks "requested time off on August 15, 2001 to accommodate her depression and was disciplined two weeks later, without support, specifics, or [Ms. Spinks] side of the story, after 10 years of a stellar record, smacks of discrimination." (Id., at 10).

Plaintiff argues that Ms. Spinks should have been progressively disciplined before termination. Plaintiff claims that Mr. Minor should have given her a written warning, a performance improvement plan and probation or suspension before terminating her. (Instrument No. 21, at 7). According to Plaintiff, Mr. Minor had knowledge of Ms. Spinks' condition and Defendant cannot show the Court a legitimate business reason to support Mr. Minor's verbal warning or termination of Ms. Spinks nor can Defendant show this Court why he skipped the step of written warning. (Id., at 10).

## II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also United States v. Arron,* 954 F.2d 249, 251 (5th Cir.1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 2511; *see also Thomas v. Barton Lodge II, Ltd.,* 174 F.3d 636, 644 (5th Cir.1999). The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process continues." *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 886–88, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and for identifying those portions of the record that demonstrate such absence. *See Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Burge v. Parish of St. Tammany,* 187 F.3d 452, 464 (5th Cir.1999).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Ind. Co. v. Zenith Radio*

*Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Engstrom v. First Nat'l Bank,* 47 F.3d 1459, 1462 (5th Cir.1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson,* 477 U.S. at 242, 106 S.Ct. 2505; *see also Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue").

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.,* 207 F.3d 776, 781 (5th Cir.2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### III.

#### A.

Plaintiff claims that Defendant violated the TCHRA by terminating her employment due to Plaintiff's disability or perceived disability or due to the perceived disability of persons associated with Plaintiff. Defendant denies Plaintiff's claims.

The TCHRA establishes a comprehensive administrative review system for obtaining relief from unlawful employment practices. The TCHRA provides in relevant part:

An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:

(1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

(2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Lab.Code § 21.051.

In enacting the TCHRA, the Texas legislature intended to correlate state law with federal law in employment discrimination cases. TEXAS LAB. CODE. ANN. § 21.001 (Vernon 1996); *M.D. Anderson Hosp. and Tumor Inst. v. Willrich,* 28 S.W.3d 22, 24 (Tex.2000). Accordingly, in employment discrimination cases, courts employ the burden-shifting analysis established by the United States Supreme Court. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *M.D. Anderson Hosp.,* 28 S.W.3d at 24 (stating that Texas state courts look to analogous federal statutes and cases when interpreting TCHRA provisions).

A Texas employment discrimination plaintiff has the initial burden to come forward with a *prima facie* case of discrimination. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. If a *prima facie* case is established, the plaintiff is entitled to a presumption of discrimination. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. The burden then shifts to the defendant/employer to present evidence of a legitimate, nondiscriminatory reason for its action. *Id.* "Subjective beliefs of discrimination alone are insufficient to establish a *prima facie* case." *Romo v. Texas Department of*

*Transp.*, 48 S.W.3d 265, 270 (Tex.App.-San Antonio 2001, no pet.) (quoting *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex.App.-Houston 1993)).

■ Once the employer has articulated a legitimate, nondiscriminatory reason for its actions, any presumption of discrimination disappears and the burden shifts back to the plaintiff to prove the employer's articulated reasons are merely a pretext for discrimination. *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097.

■ Although, "the burden of production shifts, the burden of persuasion remains continuously with the plaintiff." *Romo*, 48 S.W.3d at 270. It is not sufficient merely to show the employer's proffered reasons are false or not credible; the plaintiff must prove the employer intentionally discriminated. *Reeves*, 530 U.S. at 146–47, 120 S.Ct. 2097. In some cases, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097. However, "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

■ Under the TCHRA, it is unlawful for an employer to discharge an individual or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment because of the employee's disability. Tex.Lab.Code § 21.051 (Vernon 1998); *Leatherwood v. Houston Post Co.*, 59 F.3d 533, 536 (5th Cir.1995). The term "because of disability" refers to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job. *Id.* To sustain an action under the TCHRA, Ms. Spinks must establish three elements: (1) that she is a disabled person as defined in the TCHRA, (2) that she was discriminated against *because* of her disability; *and* (3) that the decision to terminate her was based solely on her disability. *See McIntyre v. Kroger Co.*, 863 F.Supp. 355, 357–58 (N.D.Tex. 1994) (emphasis in the original). Disability is defined in the TCHRA as, "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." TEX.LAB.CODE § 21.002(6) (Vernon 1996).

■ When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs. Reflecting this requirement, the EEOC uses a specialized definition of the term "substantially limits" when referring to the major life activity of working: significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *see also Kiser v. Original, Inc.*, 32 S.W.3d 449, 452 (Tex.App., 2000). The Fifth Circuit is instructive in *Dupre v. Charter Behavioral Health Systems of Lafayette Inc.*, holding that "not all impairments are serious

enough to be considered disabilities under the statute." 242 F.3d 610, 614 (5th Cir. 2001).

Plaintiff Spinks asserts that her severe depression substantially limits her ability to work. (Instrument No. 21, at 10). In determining whether an impairment should be classified as a covered disability, the implementation legislation of the ADA provides factors to be considered including: (1) the nature and severity of the impairment; (2) the duration of the impairment; and (3) the long-term impact of the impairment. 29 C.F.R. § 1630.2(j)(2); *see also Wheelock v. Philip Morris, USA,* 1997 WL 45292, **6–7, 1997 U.S. Dist. LEXIS 1292, 18–19 (E.D. La 1997).

■ Taking Plaintiff's assertions as true, Ms. Spinks depression is severe and she has suffered from it for over ten years, since she was fifteen. (Instrument No. 21, Exh. 4, at 22–28). However, Plaintiff provides no evidence to support an assertion that the ailment has had a long term impact on her. In fact, Plaintiff testified that she has been continuously employed before and after her service at TruGreen and that she has been able to work taking medication only periodically and without accommodations for her severe depression. (Instrument No. 18, Exh. 4, at 16–28, 83–85 and 138). Plaintiff also testified that she did not know if she had even had a doctor's appointment for her severe depression while Mr. Minor was her manager. (Id., at 115). These facts, undercut any argument that Ms. Spinks depression is of the severity, duration, and permanence needed to substantially limit a major life activity. *See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995). Accordingly, Ms. Spinks has failed to raise a genuine issue of material fact whether her condition substantially limits the major life activity of working. *See, e.g., id.* at 727.

■ To prevail on a "record of disability" claim, a plaintiff must show that he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Kiser v. Original, Inc.,* 32 S.W.3d 449, 453 (Tex.App.-Houston 2000). Again, there is no evidence in the record to demonstrate that Plaintiff has a record of disability. Further, Plaintiff does not claim that she has a record of disability except her contention that she has suffered from severe depression since she was fifteen. (Instrument No. 21, Exh. 4, at 22–28). Plaintiff provides the Court with no medical reports or testimony to corroborate that claim. As the Fifth Circuit has noted, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to support or defeat a motion for summary judgment." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995); *see also Grimes v. Texas Dep't of Mental Health,* 102 F.3d 137, 139–40 (5th Cir.1996) ("[U]nsubstantiated assertions are not competent summary judgment evidence.").

Plaintiff also asserts that Defendant regarded her or perceived her as disabled. (Id.). Ms. Spinks claims that an example of Defendant regarding her as having a disability is when she requested time off on August 15, 2001, which Mr. Minor granted, then two weeks later, on August 30, 2001, he gave Plaintiff a verbal warning for allegedly being unwilling to work with colleagues and customers. (Instrument No. 21, at 6 and 10). Plaintiff does not assert that Mr. Minor knew that the reason she was leaving work early on August 15, was due to her depression.

■ Under the TCHRA, an individual need not actually have an actual physical impairment as defined above in order to state a claim, as long as that individual is

"regarded as having such an impairment." Tex. Labor Code Ann. § 21.002(6); *see also Francis v. City of Meriden,* 129 F.3d 281, 284 (2d Cir.1997) (discussing the ADA and the Federal Rehabilitation Act of 1973). Rather, an individual is covered by the "regarded as" prong of the definition of disability in the TCHRA if she "has none of the impairments defined in [the definition of the term 'impairment"] but is treated by a covered entity as having a substantially limiting impairment." *Francis,* 129 F.3d at 284 (quoting 29 C.F.R. § 1630.2(1) (involving the ADA)). As a result, courts look to the employer's perception of the employee, which involves a question of intent, not to whether the employee has an actual disability. *See, e.g., id.*

In other words, "an employee is also regarded as having a substantially limiting impairment if his employer mistakenly believes the employee (1) has a physical impairment that substantially limits one or more major life activities, or (2) an actual, non-limiting impairment substantially limits one or more major life activities." *Haggar Apparel Co. v. Leal,* 100 S.W.3d 303, 309 (Tex.App.—Corpus Christi 2002, pet. filed). In other words, "the employer must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.*

In determining what an employer perceived, a plaintiff must allege and show that his employer regarded him as having an "impairment" within the meaning of the applicable disability statute, in this case, the TCHRA. *See Bailey v. Georgia–Pac. Corp.,* 306 F.3d 1162,1169 (1st Cir.2002); *Columbia Plaza Med. Ctr. of Fort Worth Subsidiary, L.P. v. Szurek,* 101 S.W.3d 161, 167 (Tex.App.-Fort Worth 2003).

▪ An employer does not necessarily regard an employee as having a sub-

stantially limiting impairment simply because it believes the employee is incapable of performing a particular job. *See Dupre,* 242 F.3d at 616. Rather, the plaintiff must show that the employer believed, however erroneously, that the plaintiff suffered from an "impairment" that, if it truly existed, would be covered under the statutes and that the employer discriminated against the plaintiff on that basis. *See id.; Andrews v. Ohio,* 104 F.3d 803, 810 (6th Cir.1997). Thus, to be considered "disabled" under the "regarded as" prong, a plaintiff must show that the employer regarded the employee to be suffering from an impairment within the meaning of the TCHRA, not just that the employer believed the employee to be somehow disabled. *See Szurek,* 101 S.W.3d at 167.

▪ The evidence in this case shows that Mr. Minor knew that Plaintiff claimed that she suffered from severe depression. However, there is *no indication in the record* that Mr. Minor believed that Ms. Spinks had a substantially limiting impairment that she did not have or that she had a substantially limiting impairment when, in fact, the impairment was not so limiting. The Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise matter in which the evidence supports his or her claim." *Id.* A party may not rely upon "unsubstantiated assertions" as competent summary judgment evidence. *Id.* However, what the record does show is that Mr. Minor believed that Plaintiff could not do her job at TruGreen, for other reasons.

▪ In this case, Plaintiff also claims that the Defendant's conduct violated the TCHRA only and specifically asserts that

she is not making any federal law claims. The Court researched and found no cases that involved a disability claim under only the TCHRA that also allowed a claim for disability discrimination based on an individual's association with a person with a disability or perceived disability. The TCHRA defines disability as a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such impairment or being regarded as having such an impairment. TEX. LABOR CODE 21.002(6). The TCHRA contains no provision that violations can be based on association with individuals with a disability or with individuals who are regarded as having a disability.

In contrast, the ADA includes a provision that specifically prohibits discrimination by "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association". *See* 42 U.S.C. 12112(b)(4). The plain language of the TCHRA, as opposed to the plain language of the ADA, indicates that the Texas legislators did not intend to include the provision for association with and individual with a disability, since the drafters could have included such language if they had wanted. *See Shadow v. Cont'l Airlines, Inc.,* 2003 WL 22187139, **2–4, 2003 Tex.App. LEXIS 8208, 5–8 (Tex.App., 2003).

Nevertheless, if the Court were to consider Plaintiff's claim under the ADA, the ADA prohibits employers from taking adverse employment action "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). For instance, an employer cannot make an adverse employment decision based on the "belief that the

would have to miss work" in order to care for a disabled person. *See Rogers v. International Marine Terminals,* 87 F.3d 755, 760 (5th Cir.1996); *e.g.,* Comment, 29 C.F.R. § 1630.

Although the "association provision" has not been the subject of much litigation to date. *See Moresi v. AMR Corp.,* 1999 WL 680210, 1999 U.S. Dist. LEXIS 13644 (N.D.Tex.1999). The Tenth Circuit in *Den Hartog v. Wasatch Academy,* established a four-part test for establishing a *prima facie* case of disability discrimination in violation of the association provision:

(1) the plaintiff was "qualified" for the job at the time of the adverse employment action;

(2) the plaintiff was subjected to adverse employment action;

(3) the plaintiff was known by his employer at the time to have a relative or associate with a disability;

(4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*See Den Hartog,* 129 F.3d at 1085.

Reviewing the facts in the light most favorable to the nonmovant and drawing all reasonable inferences in favor of the nonmovant, the Court assumes for the sake of this analysis that Plaintiff was qualified for her position, that Ms. Spinks suffered an adverse employment action and that Defendant knew that Plaintiff had a daughter with a cleft palate and a sister who suffered from severe depression and anxiety. Plaintiff contends that this Court should find an inference that the disability of her relative was a determining factor in TruGreen's decision, based solely on the fact that Plaintiff was terminated approximately three weeks after she asked for time off to care for her sister. In this case, Plaintiff does not assert that Defen-

dant made any comments concerning her daughter or sister or their ailments. *See Anthony v. United Tel. Co.*, 277 F.Supp.2d 763, 776 (N.D.Oh.2002) (Court found that the fact that Defendant expressed concern about plaintiff's absences and the illness of her son did not create an inference that plaintiff was disciplined because of her association with him).

■ Plaintiff does not contend that Defendant denied her the time off she requested to take care of her sister or attend to her daughter's doctor/therapy appointments. Ms. Spinks, therefore, has not established a *prima facie* case of disability discrimination based on her association with her disabled daughter or sister. *See id.* Accordingly, the Court finds that the adverse employment action did not occur under circumstances that raise a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. Consequently, the Court finds that Plaintiff's claim for disability discrimination under the TCHRA or the ADA, based on association should be dismissed.

### B.

■ In Plaintiff Spinks' response to Defendant's motion for summary judgment, she alleges that Defendant retaliated against Plaintiff for requesting accommodations in the form of time off for her own medical condition. (Instrument No. 21, at 16). A plaintiff asserting a retaliation claim must establish that without his or her protected activity, the employer's prohibited conduct would not have occurred when it did. *See McMillon v. Texas Dept. of Ins.*, 963 S.W.2d 935, 940 (Tex. App.—Austin 1998). That is, the plaintiff must establish a "but for" causal nexus between the protected activity and the employer's prohibited conduct. *McMillon*, 963 S.W.2d at 940. However, the plaintiff

need not establish that the protected activity was the sole cause of the employer's prohibited conduct. *See id.*

■ To establish a *prima facie* case of retaliation a plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. *See Graves v. Komet*, 982 S.W.2d 551, 554 (Tex.App.—San Antonio 1998). Section 21.055 of the Texas Labor Code provides that an individual is engaging in a protected activity when the employee: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. Tex. Lab. Code AnN. § 21.055 (Vernon 1996); *see also Wal–Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 295 (Tex.App.-Corpus Christi 2000).

■ Plaintiff asserts, in her pleadings, that her protected activity is requesting time off for her own medical condition. (Instrument No. 26, at 10). However, Plaintiff testified in her deposition, that she believed that the Defendant had a problem with her attaining work with her subsequent employer and that TruGreen retaliated against her by sending a letter to that employer. (Instrument No. 18, Exh. 4, at 198). Plaintiff also testified that she did not know if she ever requested time off for her own condition of severe depression, while Mr. Minor was her supervisor. (Id., at 138). Even if the Court accepts that Ms. Spinks requested time off, that action alone does not constitute a protected activity. Engaging in a protected activity requires complaining of some sort of discrimination that is covered by the TCHRA. *Azubuike v. Fiesta Mart*, 970 S.W.2d 60, 65 (Tex.App.-Houston 1998) (finding that the content of plaintiff's let-

ters would support an inference that he was engaging in a protected activity, *i.e.* complaining of discrimination, particularly where plaintiff's race, color or national origin are not even identified in the letters).

A vague charge of discrimination will not invoke protection under the statute. *See Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989) (holding vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice). In *Ulrich v. Exxon Co.* the court determined that a twenty-seven page document setting forth an employee's complaints, which made no reference to racial discrimination, confirmed that race was not in fact an issue. *U.S.A.*, 824 F.Supp. 677, 685 (S.D.Tex. 1993). In the present case, Ms. Spinks has failed to show that she engaged in protected activity, thus she cannot establish a *prima facie* case of retaliation under the TCHRA.

 Although Plaintiff has not filed a claim for intentional infliction of emotional distress, she has alleged that "Defendant's conduct was willful, extreme and outrageous and void as to Public Policy". Plaintiff suffered mental anguish and because of Defendant's actions, serious financial ills. (Instrument No. 21, at 2). However, a claim for intentional infliction of emotional distress will not lie for mere employment disputes. *Bruce*, 998 S.W.2d at 612.

Ordinary employment disputes cannot be said to be "extreme and outrageous." *Id. Compare Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 740–41 (Tex. App.-Houston 1999) (racial slurs and jokes do not rise to level of extreme and outrageous conduct); *see also Brewerton v. Dalrymple*, 997 S.W.2d 212 (Tex.1999) (negative comments reflected in professor's tenure file, repeated recommendations that professor should not continue on tenure track, restriction of professor's speech regarding contents of his tenure file, and assignment of professor to allegedly excessive class load does not amount to extreme and outrageous conduct in an intentional infliction of emotional distress claim) and *Porterfield v. Galen Hosp. Corp., Inc.*, 948 S.W.2d 916 (Tex.App.-San Antonio 1997) (verbal abuse, refusal to allow employee lunch breaks, and hostile demonstrations when employee left work sick was not extreme and outrageous conduct) *with Garcia v. Schwab*, 967 S.W.2d 883, 885–87 (Tex.App.-Corpus Christi 1998) (an employer who ridiculed a female employee's cancer surgery, joked about her breasts, and touched her breast at the site of her surgery was extreme and outrageous conduct).

 A plaintiff may recover under this tort only if her emotional distress is so severe that no reasonable person could be expected to endure it. *See Fields v. Teamsters Local Union No. 988*, 23 S.W.3d 517, 533 (Tex.App.-Houston 2000). "It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Id.* (citing *Bruce*, 998 S.W.2d at 618).

Plaintiff has made no assertions or described any conduct that rises to the level described above. It is also clear that Ms. Spinks could not sustain a claim for intentional infliction of emotional distress, given that she has not been able to establish a *prima facie* case for discrimination or retaliation.

## IV.

Based the foregoing, the Court finds that Defendants' Motion for Summary Judgment (Instrument No. 18) is GRANTED.

The Clerk shall enter this Order and provide a copy to all parties.